We'll call our last case for this morning, now early afternoon, and then we'll come back to two for the other cases. This last case is United States v. Kulick, number 09-3833, Mr. Goldberger and Mr. Smith. May it please the Court, my name is Peter Goldberger. It's my privilege this morning to represent Robert Kulick, who is the defendant below, appellant here. I'd like to reserve three minutes for rebuttal. So basically we're talking about here, it's 2K, 2.1, the cross-reference, and then that ties in with whether you can have relevant conduct under 1B, 1.3, and then that ties in whether you have groupable offenses under 3D, 1.2D, right? You got it. Here we are, 25 years after the guidelines went into effect almost, five years after Pooker, and this could have been a 1989 guidelines appeal. Is they transfer people from philosophy departments somewhere who probably helped Sartwright ghostwrite being in nothingness, but anyway. Some days I just work here. It's my job too. You actually haven't been on the Court of Appeals before the guidelines, and it was a simpler world. I was a defense lawyer arguing sentencing appeals for more than ten years before the guidelines. No one in the court below... The bottom line is they did enhancements that you have a real problem with, and you think they don't qualify under the guidelines. And it's taken us a while to get the case focused. No one in the court below was really helpful to Judge Munley. The probation officer and the judge both applied the relevant conduct rule, they said, but they didn't explain why. The prosecutor appeared to be confused. The defense lawyer came in with cases that he was pointing to without ever explaining what rule the cases were applying, and now my friend Mr. Smith and I agree. The subsection A2 of the relevant conduct rule is the controlling provision. And we know from this court's Janssen case that a relevant conduct analysis has to proceed either under A1 or A2. What about Irvin? Decided the same week as Janssen. I don't think I know what you're referring to, so help me if you want, and I'll try to answer. Oh, okay. All right. Well, is there some implied... All right, that's fine. Go ahead. I mean, there are different interpretations of the relevant conduct rule, but... Look, he pleads to possession... You say Janssen, you say we've settled this issue on A2 and Janssen. What I say Janssen decided that's pertinent to this case, so there's no misunderstanding. I understand. Is that a relevant conduct analysis proceeds either under A1 or under A2, and you have to, and the case is either one or the other and not both. Janssen also decided that simple possession of drugs is not relevant conduct with respect to possession of drugs with intent to sell. And I draw an analogy there on the merits of our relevant conduct argument that possession of a firearm is not necessarily to be treated as relevant conduct with the use of that firearm on an isolated prior occasion. So there are two ways in which Janssen is pertinent. So with respect to relevant conduct, assuming that applies, that you're saying it is A2 and not A1? I say it doesn't apply. I say that A2 is the analysis that the government concedes and argues is the pertinent line of analysis. They're trying to get groupability under A2, right? That's what they say, yes. And using the Janssen view of groupability, that is, we look only at the offense of conviction to see whether it's an A2-type case and not at whether, as one might have thought, the criminal conduct which is asserted to be relevant conduct is of a nature which, if prosecuted, would group with the conviction offense. Aren't we in the minority on that question? In the Harrison case? Harrison is saying that basically you don't have to deal with relevant conduct. It just merely has to be somehow related to the offense. Well, that's clearly right. That assertion in Harrison is just wrong and is not the holding of the case, and it should not be endorsed. There were three grounds for the decision in that case, and the Court would be well advised to just push that one aside. There is no such thing as related conduct which is not relevant conduct. Why would the commission have? It was said, I think it was on page 320 of the Harrison case, that it says explicitly we're going to deal with related conduct and not what would be relevant conduct. And it relies. But Harrison might be distinguishable because, in that case, the person explicitly accepted responsibility for the other matters, and that wasn't done here. Well, we haven't distinguished on that ground. I'm happy to see it distinguished on that ground. I think the case should be written off. That one of the three alternate holdings on that point in Harrison, which is just so clearly wrong, the commission turned backflips to define and limit exactly what is relevant conduct. A court cannot say, oh, it's logically relevant or it's related, and we don't care about the rule. Well, the bottom line, I think I hear you saying, and Mr. Smith can comment, the government doesn't dispute that. I don't think so. I don't think so. I think we both agree that one should look at an A2 analysis. But we have here two things for this court to decide on that issue. One is, would A2 apply? The other is, what should this court do about it, given the record and the history of the case? The government wants to make now a multi-factor, factual analysis that the prosecutor had a full and fair opportunity to make at the time of sentencing, was invited to make, was, in fact, in the addendum to the PSI, the probation officer told Judge Munley that the government would make at the time of sentencing and then never made. So your argument is that A2 doesn't apply because you don't get grouping under 3D 1.2, is that correct? That's not right. Or you do get grouping. You don't get grouping. Under the holding in Janssen, which looks only at... You looked at the offense of conviction. You look only at the offense of conviction, and a firearm possession by a convicted felon is, if you had multiple counts of that, they would group because it's just count the guns. So it's an A2 type offense. So you still have to do an A2 analysis, though. You should, to do this case correctly, the prosecutor should have offered the judge a basis to make an A2 analysis at the time of sentencing, but this court cannot make that analysis. But don't we have to do the A2 analysis based on what's before us? Not de novo, no. The review of that analysis would be highly deferential and fact-bound. It had to be made in the district court. The prosecutor had a full and fair opportunity. This court has a one-bite-at-the-apple rule. What you find is that the analysis was wrong by the judge, that there aren't the findings needed, and that there was no analysis made. Reverse that enhancement and remand for sentencing without the enhancement. That's the proper disposition. If you remand for a factual-type hearing, all that's happened is the government gets the benefit of the briefing on appeal to write a roadmap for the hearing that they didn't hold at the time. And that's what this court addressed in the Dickler case and said that's not fair. But can't we do the analysis and conclude that the factors under A2, temporal nature, similarity, don't exist, and therefore they should have used the guidelines for firearm possession, not extortion? Isn't that what you're asking us to do? That's my fallback position, is that if you make the analysis, you'll find that the facts available in this record don't support an A2 analysis. You get a four-point reduction, and we send it back to the district court, and they have to resentence the defendant under the correct guideline calculation. Right. What I was arguing against was giving an opportunity to present further facts on found by this court to be insufficient to justify the A2 analysis. It seems to me to get there, we have to do an A2 analysis. Yes. Okay. Yes. What do you think the sentencing range would be if it was done correctly in this case? I don't think there was any dispute about that. It's level 19 less, the two levels, four or 5K less, any other applicable variances or departures that might have been found. It would be level 17. So it would be level 17. Instead of 21. Yes. I don't have the range of months in front of me, but in my head, I did yesterday, but I don't right now. But I think it's more than a year's difference. It's a significant difference in the sentence. Yeah, particularly if you're doing it in time. You know, every day is a significant difference. I've become so jaded in the last 20-some years of hearing about this. I've heard judges say, oh, it's only a year or two. I hear people tell me 10 years is not a long sentence. You know what I tell them? Think back 10 years ago where you were and then think of all the time between then and now. Now tell me it's not long. I couldn't agree more. When you – is it a – But it's not justified. Right. Before – back to Jansen for a second. All right. I thought you – well, you dropped a footnote on page 27 or so. I think it was note 22 or thereabouts. In the opening brief. I thought you had a problem with Jansen as to whether that was correct. Now, Jansen. I do. You looked to a – it was a larger offense that was pled to and the court would not say that you could bring into account the lesser offense. Here it's just the flip of that, isn't it? Yes. Yes. I don't know if that's a decent way to distinguish Jansen or not because Jansen was actually cutting the defendant there a significant break. Yes, it did. Well, it was in that case a warranted break, but it was – yes, it worked in favor of the defendant in that case. But the guideline rules work – they work the same regardless. And then it sort of flips back to 3D1.2. It's interesting. Yes, the offense of conviction, a felon in possession, is groupable. That's included specifically. But specifically excluded is extortion. Correct. That's correct. Can you group one that's groupable with one that's not groupable? It seems to say so in Jansen. I question whether that's – my footnote questions whether that's correct, but I'm relying on the law of the circuit in making this argument. I don't think Jansen contemplated – I think Jansen, this was an unintended consequence, one could argue. Perhaps. But the principle is still the same. You look to the offense of conviction or what the person pled to. Right. Let me say that the appeal might appear to be easier to decide on the second issue, that is, the failure to address and rule upon the two grounds for variance or perhaps departure that the defense made below. But it really doesn't dispose of the case. But don't you have to rule on the first issue, though? You still have to address the scope of – yeah, the scope of remand and whether the A2 analysis could be reopened on remand. You can't really just avoid the first question. Well, actually, if it's a departure, we can't even deal with that, right? I mean, if he denies departure and realizes he could deny the departure and doesn't, we don't have jurisdiction on that. It has to be a variance, doesn't it? And it was argued both ways, for sure. Yes. So I want to emphasize. I mean, the A2, the facts are not there to prove a continuity. The government relies for the third factor under A2 on essentially a continuity of possession, which there's no evidence of. You've got a lengthy period of time of guns that belong to the wife. She may have had the guns at any time. Did the district court find that the Beretta was the same gun, though? Yes, and that was conceded. That's conceded? Yes, the government relies heavily on the – Okay, but there was no continuity. Right. There was no continuity of possession and there was no similarity between the acts and no pattern of such acts. Didn't the court also find that the gun was continuously in the drawer, in the desk drawer? No. Nothing factual. He said it was in passing in the statement of reasons the judge says that it was continuously under the defendant's control, I think is what the judge said, and the evidence doesn't support that. There's no evidence of that. So if that was a finding, it was clearly erroneous? Yes, for lack of support. Not because it contradicts the evidence, but for lack of evidence. For lack of support. That's correct. My red light is on. Okay. Thank you. We'll get you back in rebuttal. Mr. Smith. May I please the court? My name is Ted Smith. I'm an assistant U.S. attorney for the Middle District of Pennsylvania in Harrisburg, representing the United States, who is the appellee here. Can I just ask you just one question, just to clarify? Is it correct that you don't dispute that Kulik's extortion conduct should be analyzed as relevant conduct? I do not dispute that. I think it should be analyzed as relevant conduct. I think that's the meaning of the various provisions. So, in effect, what we have to do is just clarify, Harrison? I think so. But I do disagree with Mr. Goldberger regarding several other matters. I don't think there was ever a factual dispute as to whether that extortion incident had occurred, and nor was there any factual dispute as to whether the gun that was used in that extortion incident was continuously in the drawer. Well, it was the same gun and was found in the drawer. I don't think I can say that it was conceded that it was continuously there, but it was found in the same drawer from which the defendant had pulled it to commit the threat. And I think the Court could have inferred from that that it was in there the whole time. So to the extent that this is, that this appeal is focusing now on factual matters that Mr. Goldberger says weren't proven, they were simply never disputed. And if the Court finds that the factual predicate for the application, the cross-reference, is lacking, then I think it's appropriate to clarify that that is the factual matter that really was never presented and tell the parties in the Court below that they need to do a do-over and have a hearing on that. I perceived the issue, and I certainly said this, I conceded this in my standard of review, of course, because if I had really wanted a deferential, clearly erroneous, purely clearly erroneous standard of review, I would not have made the concessions I did that only the primary historical facts are subject to review for clear error, and that this really was more a question of how to apply the relevant conduct guideline. You've got the three factors. You've got similarity, regularity, and then the time interval. And it seems that the second two, regularity, which basically is a repetition type of argument, I thought the Court had found or made some statements pertaining to continuity of possession. What was that statement? The Court did. The Court made a finding that it was continuously under his control. Maintained control. Yeah, maintained control. And I have it. From 2005 to 2008. It's on page 80 of the appendix. I adopt the reasoning of the probation officer that if the threat was made to be 3.2, based on relevant conduct should apply, and we have sufficient statements and evidence in this pretrial memorandum, pretrial report filed by the probation officer. I think actually, though, earlier on that same page, you have the prosecutor actually starting on 79. Your Honor, the offense in question at the time, the gun was pointed at the employee. It was a tax evasion which involved business and interstate commerce. The defendant pointed the firearm in question to one of the employees as an act of extortion because he had not made proper disposition of funds that were being paid under the table. So at the time of the possession, that tax evasion scheme was still in effect. Then he makes his near concession. But then, middle of page 80, it is the same weapon as the one seized. The seizures occurred in the same office where the extortion took place. And therefore, the court may consider it, but not as a cross reference. And that's where counsel for the government was clearly confused because he was thinking related conduct. He was thinking that there was some sort of gestalt way in which relevant conduct could be considered when, in fact, the guideline tells us where we consider relevant conduct. And relevant conduct comes into play in deciding what guideline to choose, in deciding what specific offense characteristics, and in deciding cross references. So that was the prosecutor's error here. Now, bear in mind, he didn't do that alone. He did not commit that confusion all by himself because defense counsel started off the argument at sentencing by saying that this wasn't a relevant conduct determination at all. Saying this isn't like a drug case or a fraud case where you count things up. It's not a, and twice said, this is not a relevant conduct determination. So you have one counsel saying it's not a relevant conduct determination. You have the prosecutor saying, well, it is, it can be considered as relevant conduct, but not, but not for purposes of the cross reference. It doesn't really matter what counsel said. It's what the court. So ultimately, it depends on what the court did. And the question really then is, does the court's statement of what it, what it's finding here events that the court resolved the correct issue or not? If this court doesn't think the district court resolved the correct issue, really understood what it was doing, then I suppose it can remand for resentencing. I certainly don't think we should be precluded from arguing the factual basis that we argue when the historical facts that support that argument were never contested. But you don't disagree that we can look at this and make a determination that this was not relevant conduct? I think you can make a determination that it was not. I think you can make a determination that it was. But we can make one of those determinations. I think you can make that. Okay. And if we make a determination that it's not, then the, it has to be remanded and the guideline has to be adjusted downward by four. Does it not? Yes. There's one question in my mind, and that is whether the guideline without the cross reference is the same, or is what Mr. Goldberger says, or whether this comes in in some other fashion. I think the relevant conduct determination governs both ways. I think Mr. Goldberger may know where I'm going with this. There's a specific offense characteristic that says, reads almost identically to the other offense, then you add four levels and you bring it at least up to 18. That, just like the cross reference, depends on whether that would be 2K2.1B6. But, again, I'm not sure there's any disagreement between us. I think your first look, before you decide. That wasn't in the calculation done by the sentencing officer. Well, because the sentencing officer said the cross reference applied, and nobody got into whether that one would apply. And I think that, honestly, the pre-sentence officer was at least doing the proper calculus in saying, well, if it's not relevant conduct for purposes of the cross reference, then it can't be relevant conduct for purposes of this specific offense characteristic. Do you concede, make sure I understand your position, do you concede that it also, if this goes back, cannot be related conduct? Well, under Harrison. Yes. You know, in a world, in some ways this used to be easier before Booker, because I certainly don't concede that the court could not consider it, okay? Could not arrive at the guidelines calculations that the parties, that Mr. Goldberger says applies, but then say, you know, it may not be relevant conduct, but I'm going to consider it, and I'm going to vary upward, but then I'm going to depart downward. And the court could impose the same sentence, finding that, you know, I find it significant in this case that you pointed the very same gun that was two years earlier, you pointed it at somebody and threatened them. Or three years earlier. It wasn't three years. 27 months. Yes, 27 months. And for that reason, even though I've been told now by the court of appeals that this is not relevant conduct, and therefore I don't apply the cross reference or the specific offense factor, I, there's never been any dispute that this happened, and I think this is a basis for varying upward. This is what you're really talking about, is we're speculating about analysis that could be done at step three of sentencing. Yes. I certainly think if there's a remand, and I'm certainly reading the tea leaves to suggest that there will be here, that the court is free, even if it has to recalculate the guidelines, the court is free to revisit the entire sentencing package. What is it that you want us to do here? I think it's relevant conduct, and I think the cross reference was properly applied, and you should affirm. We have to affirm. Yes. But you said you're reading the tea leaves. I'm not sure which leaves you're reading to come to that conclusion. But when you do look at the prongs under A2, I think you've got some problems with temporal proximity and similarity, do you not? Why don't you just stress the time interval first? The time interval is long, although in the case I cited, one of the cases I cited, we had incidents that were separated by almost two years. In another case I cited, we had incidents that were separated, I believe, by 19 months. And so I think we're talking about firearms possession, and that's a different thing than temporal proximity of other types of offenses, because we know, and the law says, the law recognizes, that people tend to hold on to their guns. Guns are hard to get, perhaps not hard enough, but once you get a gun, if you're a crook and you have a felony record, once you get a gun, you're going to hold on to it, because you're going to have to pay a lot of money to somebody to get another one. So I think firearms possession, two years, is not really temporally improximate. I think it's, if you look at the fact that here, it was the same gun, and there's certainly evidence, I think, from which one could infer that it was continuously possessed. I think that sort of overcomes the temporal proximity problem. What about similarity? Possession of a gun, okay? And? A loaded gun. Possession of a loaded gun in one's desk drawer, and removing a gun from one's desk drawer and threatening somebody, the same gun from one's desk drawer and threatening somebody with it. I don't think those are dissimilar. I think in the one case I cited, the Santos-Santoro case out of the Seventh Circuit, they were applying not the cross-reference, but they were applying almost the identical language of the specific offense characteristic. You know, you had a December bank robbery, an SKS assault rifle is used. The court finds, the district court finds about six to nine months earlier, Santoro had traded that rifle to the perpetrator of the robbery for drugs. And then just a short time after the robbery, within a month certainly, the police seize a .380 caliber pistol from Santoro and a 9mm pistol from Santoro. It was not the specific issue in the case, but the district court held that Santoro was responsible for the SKS, and the court of appeals did hold that that was a correct determination. But the district court also held that he got a four-level increase because he had reason to believe it would be used in a felony. And so you're talking about almost identical language of the cross-reference or the specific offense characteristic to the cross-reference. So I don't think we're, I don't really think we're dealing with offenses that are that dissimilar. Regularity, you know, of course it's hard to, anytime you count one, two, and stop, it's difficult to say that there's regularity. Yet, manifestly, the guideline has been interpreted to apply even in cases where there are only two instances. But here, I think, what we have is evidence that it was the same gun. Not evidence, we know it was the same gun. And evidence that it was in the same place from which it had been pulled out and pointed at somebody two years earlier. Let me ask you another question. Is our decision in Janssen correct? I did not think so when I litigated Janssen. That was my case. But that is the law of this circuit right now. That wasn't my question. I do not think it was correct, okay? Okay. But I'm bound by it. I did not think it was correct when I argued against the position the court took. Is there a way to distinguish it by saying that Janssen was, took into account potentially relevant conduct that was less serious? But in this case, the potentially relevant conduct is more serious. I was trying to get my mind around that when Your Honor asked Mr. Goldberger, and I did not come up with anything miraculous between then and now. There it was less serious. Now it's more serious. Perhaps not. I think here's how I get around it, okay? We're talking about a gun versus drugs, versus use, excuse me, versus drugs possessed for sale or drugs possessed for personal use, okay? I think that's very, very different, talking about guns possessed or drugs possessed for personal use and guns possessed for personal use, guns possessed for nonviolent use. I think we're talking about something that is, in essence, it's an offensive weapon. It's something that one uses to shoot. If it's a sporting weapon, that's one thing. But this is a .380 caliber, loaded .380 caliber pistol. And I think, so the distinction I make here is more of a fact-centered distinction. We're talking about, we're not talking about counting drugs that the guy, that was the doper's head stash along with his distribution quantities. We're talking about counting a gun that he possessed now and taking into account the fact that he used the same gun to point at somebody and threaten him about two years ago. The other problem I have with Jensen, just from a logic point of view, is, okay, it's clear that when you have possession of drugs and then possibly possession for personal use, there's possibly an argument that that's groupable or not groupable. But here you have what clearly is groupable specifically, is felon in possession, but what is clearly not groupable is extortion. Yeah. And it's like you're trying to merge, you're saying, okay, I can take the one that says because the offensive conviction is the felon in possession and put it with something that we're told specifically is not groupable. It doesn't seem right. Well, and that's a basis on which perhaps even the panel could distinguish Jensen without having to go and bank and overrule it. I personally like my ‑‑ No. In bank. In bank. In bank. Oh, yeah. Yeah. No, I understand. That's why I haven't ‑‑ that's why I was reticent to answer Judge Fischer's question, do I agree with Jensen? No, I argued vociferously against the court's finding. Well, I thought that your position would remain the same. Yeah. That's why I asked the question. Yeah. But I'm stuck with Jensen. But I personally think the ‑‑ I like the basis that I argued. I just think talking about possession of a gun and the actual use of a gun in an offensive fashion is just different from simple possession of drugs and sale of drugs. My ‑‑ I'm way past red light here, so. No further questions. Thank you very much, Your Honors. Actually, the possession of the gun and the use of the gun are dissimilar in just the same way. The reason a business person keeps a gun in the drawer of a desk is for self defense in a cash business against a criminal attack on the business. And in this case, it went beyond self defense. Oh, and it's dissimilar from using that gun offensively to threaten somebody with. That's the nature of the dissimilarity is fundamentally analogous. One could argue that both reasons are why the person kept it in the drawer. Well, that's not what was said at this hearing on this sentencing. And that's relevant to a point that my friend made when he says ‑‑ well, we're talking about this gun in the drawer. I don't know where the other guns were. I don't ensure that that's ‑‑ it was even in the record where the other guns were. It's a fact you would want to know. But you don't know, and that's why the government failed to meet its burden of proof. And when you ‑‑ my friend says, if you're a crook, this is what you do with a gun. Mr. Kulik is disqualified from possessing a gun because 20 years ago he was convicted of tax evasion. This is not someone who is a career criminal using guns. It's ‑‑ the basis of his felon disqualification is so remote that it didn't even count as criminal history at this sentencing. Just two quick things about the government asking to rethink this case from scratch. Basically, they want a remand to do this sentencing over from scratch. Dickler protects us against that, and it protects the courts against that. We don't get to think about the case and send it back and do it over. And that applies to this case in numerous ways. We don't get to say the possession was continuous. The government is judicially estopped from that. They indicted Mr. Kulik on count one and count two for possession of the same gun on different occasions. If the possession was continuous, if the grand jury thought the possession was continuous, that's one offense. That's not two offenses. They wanted two offenses in the indictment to bump up the case. Now they want one offense to bump up the sentence. That's judicially estopped. You can't play that game. And it's too late now to go back and assert subsection B6 of the guidelines for the same reason. It's the pre-sentence report in paragraph 14 says if it were not for the cross reference, the guideline level would be 19. That would not be so if you applied the B6 factor. The prosecutor had a fair opportunity to object to the pre-sentence report at that time. It would have been 14 versus 18, but okay. Four-point difference. I forget how you get to 19, but you do get to 19. In any event, it clearly, the probation officer either concluded that it didn't apply, which would be true under relevant conduct analysis, properly done, or overlooked it. Whichever, the prosecutor has his chance to object to the pre-sentence report then, not now. And that's done. That's final. Even if it's a four-level mistake, it's final. And we don't get to go back and do this sentencing now as if it were two or three years ago. For those reasons, the court should reverse and remand for sentencing at level 19, less the departure for cooperation and less any other variance or departure that applies under the facts that appear at resentencing. Thank you. And I thank both counsel for your usual exceptionally presented oral arguments. I take the matter under advisement. Thank you.